**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.:_____

KAREN JONSCHER,

      Plaintiff,

v.

UNIVERSITY OF COLORADO, through its Board, THE REGENTS OF THE UNIVERSITY OF COLORADO, a body corporate,

      Defendant.

---

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

---

Plaintiff, Dr. Karen Jonscher, through undersigned counsel, as and for her Complaint against the University of Colorado, through its Board, the Regents of the University of Colorado, a body corporate, hereby alleges:

## <u>INTRODUCTION</u>

This action seeks declaratory, injunctive and equitable relief, as well as monetary damages, to redress Defendant's unlawful employment practice with respect to pay inequality, against Plaintiff in violation of the Equal Pay Act of 1963, 29 U.S.C. §206(d) ("EPA").

As set forth below, Plaintiff is a victim of barriers to advancement, which have included compensation commensurate with male employees and equality with respect to the terms and conditions of employment.

## PARTIES

1.     Plaintiff Dr. Karen Jonscher is a resident of the State of Oklahoma.

2.     Defendant University of Colorado ("CU") is a state institution of higher education established and regulated by Article IX, §§ 12 and 13, Colorado Constitution, and State statutory law, C.R.S. §§23-20-101, *et seq.*

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this action under 28 U.S.C. §1331 and specifically under 29 U.S.C. §206(d).

4.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because the events giving rise to this Action, including the unlawful employment practices alleged herein were committed in the District of Colorado.

5.     At all relevant times, Defendant CU was an employer pursuant to the meaning of 29 U.S.C. §206(d).

6.     At all relevant times, Plaintiff was an employee pursuant to the meaning of 29 U.S.C. § 206(d).

## SPECIFIC ALLEGATIONS

7.     Defendant CU is engaged in the business of higher education.

8.     Defendant CU operates the School of Medicine on the Anschutz Medical Campus in Aurora, Colorado. At all relevant times, Defendant CU meets the definition of an "employer" under the applicable statute.

9.     The mission statement of the University of Colorado Anschutz Medical Campus states, among other things, that Defendant CU embraces excellence in elements including learning and scholarship, discovery and innovation, and diversity, respect and inclusiveness.

10.     Defendant CU's nondiscrimination policy statement states that, in furtherance of its commitment to maintaining a positive learning, working and living environment, it does not discriminate on the basis of race, color, national origin, pregnancy, sex, age, disability, creed, religion, sexual orientation, gender identity, gender expression, veteran status, political affiliation or political philosophy in admission and access to, and treatment and employment in, its educational programs and activities.[1]

11.     Defendant CU's policy states that discrimination occurs when an individual suffers an adverse consequence on the basis of a protected class.

12.     Plaintiff holds a Ph.D. in applied physics from the California Institute of Technology.

13.     Plaintiff is female, Jewish and sixty-one years of age.

14.     At all relevant times, Plaintiff met the definition of an "employee" under the applicable statute.

15.     Plaintiff worked for CU, in the Department of Anesthesiology, commencing in 2005. In 2006, she was promoted to tenure track assistant professor and director of a proteomics laboratory.    In 2010, Plaintiff was promoted to associate professor, a tenure-track position.

16.     In 2012, Plaintiff was awarded a "K25" mentored career transition award which supported her salary and biomedical research.

17.     Plaintiff inquired with respect to her remuneration on multiple occasions and was advised that the Department of Anesthesiology would not contribute any funds whatsoever toward a salary increase.

---

[1] Regent Law, Article 10.

18.     Plaintiff has had and continues to enjoy a distinguished career as a researcher, with multiple publications in scientific journals, and grant funding from national research institutes.

19.     Plaintiff's area of research involves the intersection of applied physics and the life sciences, including biological mass spectrometry and, more recently, metabolism, diabetes and obesity.

20.     Plaintiff is a member of many professional societies and is the recipient of a multitude of academic honors. Notably, in 2012, she received the Distinguished Service Award from Defendant CU's Faculty Council.

21.     In 2014, an article that she co-authored was the "most cited paper" published in the Biochemical Journal and her contributions to science are significant, with ongoing clinical and research applications.

22.     In 2015, the Department of Anesthesiology presented a preliminary research salary structure for Ph.D., as opposed to MD researchers, to members of its research committee and Ph.D. researchers.

23.     The mean income, as derived from Human Resources department data, for holders of Ph.D.s at the associate professorial level was $117,915 at that time and that of an assistant professor was $94,876, notably higher than Plaintiff's remuneration at that time, after over twenty years in the field.

24.     Plaintiff obtained external funding from the National Institutes of Health, among other sources, to support her research endeavors and, from 2013 through 2017, she received $10,000 per year in support from the Department of Anesthesiology; this research resulted in new publications and critical acclaim.

25.     On January 18, 2017, she met with the Chair of the Department, Dr. Vesna Jevtovic-Todorovic, who informed her that her primary goal should be obtaining "R01" grant funding.  Dr. Todorovic told Plaintiff that such funding application may go through several cycles and that, in all likelihood, she would have to reapply for it on at least one occasion.

26.     Between 2015 and 2017, Plaintiff had published five papers in scholarly journals and submitted ten extramural proposals as well as two proposals for internal funding.

27.     Plaintiff submitted an R01 proposal on June 19, 2017 as instructed.

28.     On February 18, 2018, Plaintiff met with Dr. Todorovic for her annual performance review, whereupon she was told to keep submitting the R01 and that her performance rating met expectations.

29.     During the pendency of the R01 grant application, Plaintiff received a grant from NASA which supported ten percent of her salary and, on March 5, 2018, she reapplied for the R01.

30.     At that time, the Department of Anesthesiology had proposed a salary tier range of between $110,000 to $135,000 for associate professors with final salary to be determined based on faculty awards or grants, years of experience and seniority within the Department, all of which Plaintiff possessed.

31.     In such proposal, the Department articulated that, after losing all grants/external funding, it would support any faculty member for up to one year prior to issuing a non-renewal or his or her contract, with annual reviews to be conducted to determine additional financial support as well as a timeframe for non-renewal.

32.     On April 9, 2018, Plaintiff was informed that her contract would be terminated, effective April 9, 2019.

33.     However, Plaintiff was assured that by Dr. Herson, the Vice Chair for Research that, based on her contributions to the Department, Defendant would extend her contract for six months after the termination date if her proposal showed progress toward reaching funding status, although he declined to reduce this to writing, citing "legal implications".

34.     On April 10, 2018, Dr. Herson sent an e-mail to Plaintiff reiterating his commitment to supporting her reflecting that more time might be required for resubmission of the proposal.

35.     Thereafter, she resubmitted the proposal and its rank score indicated significant progression toward funding status.

36.     Notwithstanding this, on August 3, 2018, Dr. Herson told plaintiff that her contract would not be extended for an additional six months, in contradiction of his prior written commitment toward that end.

37.     Plaintiff requested "bridge" departmental support for her salary pending approval of additional grant funding on August 6, 2018, to which absolutely no response was forthcoming.

38.     On January 25, 2019, Plaintiff met with Dr. Todorovic for her annual review, at which time Dr. Todorovic inquired whether she was going to work at the University of Oklahoma with her mentor, despite the fact that her entire family, including four adolescent and young adult sons and elderly parents, lived in Denver.

39.     Plaintiff inquired of Dr. Todorovic whether her contract would be renewed should she obtain funding prior to the April 2019 deadline and the response, in direct contradiction to prior and repeated assurances, was negative because her longstanding research interests did not align with Dr. Todorovic's vision for the department.

40.     Plaintiff was subject to contradictory and shifting expectations as well as repeated false assurances.

41.     Plaintiff was subsequently offered a position at the University of Oklahoma Health Sciences Center which she accepted.

42.     Plaintiff's last day of work at CU was April 12, 2019.

43.     Plaintiff's R01 grant, naming her as principal investigator, was approved in 2019.

44.     Plaintiff's ending salary at CU was $90,176, rendering her one of the three (3) lowest paid professors on the entire campus commensurate with her title and experience at that time. The average male associate professor at the time of her departure earned approximately $120,000, a significant discrepancy.

45.     Plaintiff's pay for the 2018 calendar year was in the seventh percentile of those earning $160,000 or less, a calculation which, by its own terms, excludes physician members of the department; the average salary for non-physicians was $119,615.

46.     Plaintiff was paid only marginally more than the four lowest paid assistant professors in the Department of Anesthesiology.

47.     Plaintiff was compensated less well than male colleagues who were substantially less qualified and experienced.

48.     Plaintiff earned less than Jost Klawitter, an associate professor in the department who has never obtained funding from the National Institutes of Health.

49.     Plaintiff earned approximately the same amount as Eric Clambey, an assistant professor in the department.

50.     During Plaintiff's employment by Defendant CU, her job required at least equal skill, effort and responsibility, as well as comparable working conditions, to that of males similarly situated.

51.     On May 13, 2019, Plaintiff filed a complaint with Defendant CU's Office of Equity and, in a written response, the Department acknowledged that the purported external funding obligation was arbitrarily and not uniformly enforced.

52.     Plaintiff has sustained enormous damage to her career, research and reputation as a consequence of Defendants' acts.

53.     Plaintiff has sustained the disruption of her family by virtue of her need to accept employment at the University of Oklahoma, away from her ailing parents and her children.

54.     During Plaintiff's employment, Defendant CU knew that she was remunerated at a lower rate than that of her male colleagues but did not correct the disparity in pay.

55.     Defendant CU was unjustly enriched in consequence of its improper and discriminatory underpayment to Plaintiff.

## STATEMENT OF CLAIMS

### FIRST CLAIM FOR RELIEF
(Violation of the Equal Pay Act)

56.     The foregoing allegations are realleged and incorporated herein by reference.

57.     The claims brought herein are brought under the Equal Pay Act, 29 U.S.C. § 206 et seq.

58.     During Plaintiff's period of employment, Defendant CU was subject to the provisions of the Equal Pay Act, 29 U.S.C.§ 206 et seq. During that time, Defendant CU required Plaintiff to perform the same or substantially the same job position as male employees, requiring equal skill, effort, academic credentials, experience and responsibility, under similar working conditions in the same institution, and paid Plaintiff at a rate of pay, including salary and benefits, less than such male employees.  The difference rate of pay was not part of or occasioned by a seniority system, merit system, or a system based on the quality of work product.

59.     Defendant CU engaged in patterns, practices and policies of employment which willfully, and in the alternative, unwilfully, discriminated against Plaintiff on the basis of gender and by paying.

60.     Plaintiff a lesser rate of pay, including salary and benefits, than that paid to male employees performing the same or substantially similar job duties which require equal skill, effort, academic credentials, experience and responsibility, and under the same working conditions and at the same institution.

## SECOND CLAIM FOR RELIEF
### (Breach of the Covenant of Good Faith and Fair Dealing)

61.     Plaintiff entered into an employment relationship with Defendant CU in good faith.

62.     Plaintiff did all, or substantially all of the things required of her and was assured that any delay in obtaining external funding would not be unusual or result in refusal to renew her contract.

63.     Plaintiff did nothing less than other researchers in the Department, the condition for whom were excused.

64.     Defendant CU did not provide the same conditions for Plaintiff's continued employment.

65.     By failing to do so, Defendant CU did not act fairly or in good faith, resulting in direct, substantial and material harm to Plaintiff, whereupon damages should lie.

## THIRD CLAIM FOR RELIEF
### (Unjust Enrichment)

66.     Defendant CU benefited from and was unjustly enriched by its failure to remunerate Plaintiff to the same extent and on the same terms as male colleagues similarly situated.

67. Defendant CU had knowledge of and volitionally engaged in an ongoing pattern of remunerating Plaintiff less than male colleagues similarly situated and/or equivalent to those of male colleagues with less experience and lower academic rank.

68. Defendant CU acted in violation of the Equal Pay Act and it would be unlawful and unjust for Defendant CU's violation of the Equal Pay Act to be tolerated to Plaintiff's detriment, whereupon damages should lie.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that the Court enter judgment in her favor and against Defendants, containing the following relief:

A. A declaratory judgment that the actions, conduct and practices of Defendant CU complained of herein violate the laws of the United States;

B. An injunction and order permanently restraining Defendant CU from engaging in such unlawful conduct;

C. Determine the damages sustained by Plaintiff as a result of Defendant CU's violations of the EPA, and award those damages against Defendant CU and in favor of Plaintiff, plus such pre-judgment and post-judgment interest as may be allowed by law;

D. Award Plaintiff an additional equal amount as liquidated damages because Defendant CU's violations were willful and/or without a good faith basis;

E. Award Plaintiff damages in an amount to be determined that trial, for all monetary and/or economic damages, including, but not limited to, loss of past and future income, wages, compensation, seniority and other benefits of employment;

F.      Award Plaintiff damages in an amount to be determined at trial, to compensate Plaintiff for harm to her professional and personal reputation and loss of career fulfillment;

G.      Award Plaintiff damages in an amount to be determined at trial, plus pre-judgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages.

H.      Award Plaintiff damages for any and all monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial;

I.      An award for punitive damages in an amount to be determined at trial;

J.      An award of costs that Plaintiff has incurred in this action, including, but not limited to, expert witness fees, as well as Plaintiff's reasonable attorneys' fees and costs to the full extent permitted by law; and

K.      Such other and further relief as the Court may deem just and proper.

**PLAINTIFF DEMANDS TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Respectfully submitted on February 25, 2021

By:     KATZ AND KERN, LLP

_s/ Chet Kern_

Chet Kern
44 Cook Street
Denver, CO 80206
Tel: 303-398-7000
E-mail: ckern@katzandkernllp.com
*Attorneys for Plaintiff Karen Jonscher*

OF COUNSEL

11

*s/ Julia Wilcox*
*s/ Gregg D. Weinstock*
*s/ Thomas P. Brennan*
*s/ Margaret Antonino*
*s/ Alexandra Zerrillo*
*s/ Tyler M. Fiorillo*
*s/ Michael P. Diven*

## CERTIFICATION OF GOOD STANDING

I hereby certify that I am a member in good standing of the Bar of this Court.


By:     KATZ AND KERN, LLP

        s/  *Chet Kern*
        _____

        Chet Kern
        44 Cook Street
        Denver, CO 80206
        Tel: 303-398-7000
        E-mail: ckern@katzandkernllp.com
        *Attorneys for Plaintiff Karen Jonscher*

        OF COUNSEL

        *s/ Julia Wilcox*
        *s/ Gregg D. Weinstock*
        *s/ Thomas P. Brennan*
        *s/ Margaret Antonino*
        *s/ Alexandra Zerrillo*
        *s/ Tyler M. Fiorillo*
        *s/ Michael P. Diven*

## CERTIFICATE OF SERVICE

I certify that on February 25, 2021, I filed the foregoing with the Clerk of the Court using the

CM/ECF system and will also send notification of such filing to the following email address:

Hermine Kallman
Senior Assistant University Counsel
University of Colorado
Office of University Counsel
1800 Grant Street, Suite 700
Denver, CO 80203
303-860-5691
Hermine.Kallman@cu.edu

By:     KATZ AND KERN, LLP

_s/_ *Chet Kern*

Chet Kern