IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Regina M. Rodriguez

Civil Action No. 1:21-cv-00571-RMR-KLM

KAREN JONSCHER,

    Plaintiff,

v.

UNIVERSITY OF COLORADO,
through its Board, the Regents of the University of Colorado, a body corporate

    Defendant.

---

### ORDER

---

Pending before the Court is the parties' Joint Motion to Approve Settlement, ECF No. 26. For the reasons stated below, the Court GRANTS the motion and APPROVES the parties' proposed Settlement Agreement. The parties are DIRECTED to file the appropriate dismissal papers within thirty (30) days of the date of this Order.

### I.    BACKGROUND

Plaintiff Dr. Karen Jonscher is a woman who worked for Defendant in its Department of Anesthesiology starting in 2005, after which she was promoted to a position as a tenure track assistance professor and subsequently to a position as a tenure track associate professor. *See* ECF No. 1 ¶ 13, 15. She worked for Defendant until April 12, 2019. *Id.* ¶ 42. On February 25, 2021, Plaintiff filed a Complaint against Defendant University of Colorado. *Id.* Plaintiff alleged, first, that Defendant violated the Equal Pay

Act provisions, 29 U.S.C. § 206, et seq., of the Fair Labor Standards Act ("FLSA") by "discriminat[ing] against Plaintiff on the basis of gender" and requiring her "to perform the same or substantially the same job position as male employees, requiring equal skill, effort, academic credentials, experience and responsibility, under similar working conditions in the same institution, and paid Plaintiff at a rate of pay, including salary and benefits, less than such male employees." *Id.* ¶¶ 58–60. Second, Plaintiff alleged that Defendant breached the covenant of good faith and fair dealing by failing to act fairly or in good faith in her employment relationship with Defendant. *Id.* ¶ 61–65. Third, Plaintiff alleged that Defendant "was unjustly enriched by its failure to remunerate Plaintiff to the same extent and on the same terms as male colleagues similarly situated." *Id.* ¶ 66.

On May 5, 2021, Plaintiff entered a Stipulation of Dismissal of her second and third claims for relief for breach of the covenant of good faith and fair dealing and unjust enrichment, respectively. ECF No. 13. That same day, the Court, construing the stipulation as a motion to dismiss, with prejudice, the second and third claims, granted it and dismissed those two claims with prejudice. ECF No. 14. Accordingly, Plaintiff's sole remaining claim is her first claim for relief for violation of the Equal Pay Act. *See* ECF No. 1 ¶¶ 56–60. On November 11, 2021, the parties filed the present Joint Motion to Approve Settlement, ECF No. 26, attaching their proposed Settlement Agreement, ECF No. 26-1, and Plaintiff's attorneys' Billing Summary, ECF No. 26-2. For the reasons stated below, the Court GRANTS the Joint Motion to Approve Settlement, ECF No. 26, and APPROVES the proposed Settlement Agreement.

## II.     LEGAL STANDARDS

As the parties point out, there is disagreement within the Tenth Circuit and in the District of Colorado regarding whether FLSA settlements require Court approval. *Compare, e.g.*, *Ostrander v. Customer Eng'g Servs., LLC*, No. 15-cv-01476-PAB-MEH, 2018 WL 1152265, at *1 (D. Colo. Mar. 5, 2018) (Brimmer, C.J.) ("In a lawsuit brought by employees against their employer to recover back wages under the FLSA, any proposed settlement between the parties must be presented to the court for a determination of whether the settlement is fair and reasonable."), *and Davis v. Crilly*, 292 F. Supp. 3d 1167, 1170 (D. Colo. 2018) (Arguello, J.) ("In a suit by employees against their employer to recover back wages under the FLSA, the parties must present any proposed settlement to the district court for review and a determination of whether the settlement agreement is fair and reasonable."), *and Thompson v. Qwest Corp.*, No. 17-cv-1745-WJM-KMT, 2018 WL 2183988, at *2 (D. Colo. May 11, 2018) (Martínez, J.) ("[T]he Court will go forward under the assumption that it must approve the Proposed Settlement."), *with Ruiz v. Act Fast Delivery of Colo., Inc.*, No. 14-cv-00870-MSK-NYW, 2017 WL 11545275, at *3 (D. Colo. Jan. 9, 2017) (Krieger, J.) ("[N]othing in the text of the FLSA expressly requires court review and approval of settlements. . . .  [A]n FLSA claim that is genuinely disputed by the employer may be compromised via a private settlement between the parties, and [] such settlement will be legally effective regardless of whether they are submitted to or approved by the trial court."), *and Fails v. Pathway Leasing LLC*, No. 18-cv-00308, 2018 WL 6046428, at *3 (D. Colo. Nov. 19, 2018) (Arguello, J.) ("This Court

3

joins with Chief Judge Krieger in concluding that judicial review of bona fide FLSA disputes is not required.").

As Magistrate Judge Kristen L. Mix observed in *Slaughter v. Sykes Enterprises, Inc.*—in which, upon consent of the parties, she exercised jurisdiction to preside over all matters for all purposes, *see* 28 U.S.C. 636(c); D.C.COLO.LCivR 72.2—"while there is disagreement over whether FLSA settlements *must* be approved by the Court, there does not appear to be disagreement at this time over whether FLSA settlements *may* be approved by the Court."  No. 17-cv-02038-KLM, 2019 WL 529512, at *6 (D. Colo. Feb. 11, 2019) (Mix, Mag. J.) (emphasis in original).  The Court agrees and elects, in this case, to grant the parties' request to approve their FLSA settlement.

Where this Court has held (or assumed) that it must approve any proposed settlement between the parties in an FLSA action, it has noted that in order to approve an FLSA settlement, "a court must find that: (1) the agreement is the result of a bona fide dispute; (2) the proposed settlement is fair and reasonable to all parties involved; and (3) the proposed settlement contains a reasonable award of attorneys' fees and costs." *Ostrander*, 2018 WL 1152265, at * 3 (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982)); *see Thompson*, 2018 WL 2183988, at *2; *see also Davis*, 292 F. Supp. 3d at 1171.

### III.   ANALYSIS

For the reasons stated below, the Court finds that the proposed Settlement Agreement here "is the result of a bona fide dispute"; "is fair and reasonable to all parties

4

involved"; and "contains a reasonable award of attorneys' fees and costs." See *Ostrander*, 2018 WL 1152265, at * 3.

### A. Bona Fide Dispute

"Parties requesting approval of an FLSA settlement must provide the Court with sufficient information to determine whether a bona fide dispute exists." *Davis*, 292 F. Supp. 3d at 1172 (citing *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1234 (M.D. Fla. 2010)); *see also Baker v. Vail Resorts Mgmt. Co.*, No. 13-cv-01649-PAB-CBS, 2014 WL 700096, at *1 (D. Colo. Feb. 24, 2014) (Brimmer, C.J.). This Court has held that parties must provide the following information in FLSA wage and hour disputes:

> [T]he parties must present: (1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employees' right to a minimum wage or overtime; (4) the employees' justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage.

*Davis*, 292 F. Supp. 3d at 1172 (citing *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 718 (E.D. La. 2008)). "The mere existence of an adversarial lawsuit is not enough to satisfy the bona fide dispute requirement." *Id.*

The present case does not involve a wage and hour dispute, but rather a dispute regarding whether Defendant "discriminated against Plaintiff on the basis of gender" by paying her a lower rate of pay than her male colleagues for the same work in violation of the Equal Pay Act. *See* ECF No. 1 ¶¶ 58–60. Accordingly, the Court notes that the fifth criterion listed above ("each party's estimate of the number of hours worked and the applicable wage," *Davis*, 292 F. Supp. 3d at 1172) does not appear to apply to the present

5

proposed settlement. Furthermore, the third and fourth criteria listed above regarding wages and overtime, do not appear to apply, either. *Cf. Davis*, 292 F. Supp. 3d at 1172. Given the nature of this dispute, the Court finds that the parties have provided sufficient information for the Court to conclude under the remaining criteria that the proposed agreement seeks to settle a bona fide dispute between the parties.

The parties have provided information about the nature of this dispute, the employer's reasons for disputing the employee's claim, and the employee's justification for her disputed salary, stating that, on the one hand, Plaintiff alleged that "her salary was only $90,176, compared to the average salary of her male colleagues which was $120,000," ECF No. 26 at 3, while on the other hand, Defendant argued that "there was wide distribution of salary among the faculty holding Ph.D. degrees, both male and female" because "the salary for faculty holding Ph.D. . . . degrees at the Department of Anesthesiology is based on the amount of external grants that the faculty secures to fund their work," *id.* at 4. Also, the parties have provided information about the nature of the employer's business and the type of work performed by the employees, noting that Plaintiff performed scientific research in the University of Colorado's Department of Anesthesiology. *See id.* at 4. Defendant argues that different faculty members also performed different types of work, including taking "leadership responsibilities in the department" and roles that were "funded, in part, by income received from performing contract work for private industry," unlike Plaintiff "who relied exclusively on external grant funding" for her work. *Id.* Given this information, the Court finds that there is a bona fide dispute regarding Plaintiff's equal pay claim that the parties seek to settle.

6

### B. Fair and Reasonable Proposed Settlement

"To be fair and reasonable, an FLSA settlement must provide adequate compensation to the employees and must not frustrate the FLSA policy rationales." *Davis*, 292 F. Supp. 3d at 1173 (citing *Baker*, 2014 WL 700096, at *2).

> Congress' purpose in enacting the Equal Pay Act was to remedy what was perceived to be a serious and endemic problem of employment discrimination in private industry—the fact that the wage structure of "many segments of American industry has been based on an ancient but outmoded belief that a man, because of his role in society, should be paid more than a woman even though his duties are the same." . . . The solution adopted was quite simple in principle: to require that "equal work will be rewarded by equal wages."

*Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974) (quoting S. Rep. No. 176, 88th Cong., 1st Sess., at 1 (1963)). Further, "the purpose of [the FLSA is] to 'protect certain groups of the population from substandard wages and excessive hours . . . due to the unequal bargaining power as between employer and employee.'" *Morton v. Transcend Servs., Inc.*, No. 15-cv-01393-PAB-NYW, 2017 WL 977812, at *1 (D. Colo. Mar. 13, 2017) (Brimmer, C.J.) (quoting *Brooklyn Sav. Bank v. O'Neill*, 324 U.S. 697, 706 (1945)).

"Courts considering both individual and collective settlements under the FLSA turn to the factors for evaluating the fairness of a class action settlement." *Morton*, 2017 WL 977812, at *2. The Tenth Circuit considers the following four factors in assessing whether a proposed class action settlement is fair and reasonable:

(1) whether the proposed settlement was fairly and honestly negotiated;

(2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;

7

>   (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and
>
>   (4) the judgment of the parties that the settlement is fair and reasonable.

*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002); *see also Felix v. Thai Basil Thornton, Inc.*, No. 14-cv-02567-MSK-CBS, 2015 WL 2265177, at *2 (D. Colo. May 6, 2015) (Shaffer, Mag. J.) ("Normally, a settlement is approved where it is the result of contentious arm's-length negotiations, which were undertaken in good faith by counsel . . . and serious questions of law and fact exist such that the value of an immediate recovery outweighs the mere possibility of further relief."). "There is a strong presumption in favor of finding a settlement fair." *Davis*, 292 F. Supp. 3d at 1173.

The Court finds, first, that the proposed settlement here was fairly and honestly negotiated. *See Rutter & Wilbanks Corp.*, 314 F.3d at 1188. The parties are all "represented by competent counsel," and according to the parties, their counsel "investigated the merits of Dr. Jonscher's claims before engaging in negotiations to resolve this dispute." ECF No. 26 at 5.

Second, the parties agree that "[s]ubstantial questions of fact exist as to whether the discrepancy in salary, if any, was due to Dr. Jonscher's gender." *Id.* Thereby, the parties have established that "serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt." *See Rutter & Wilbanks Corp.*, 314 F.3d at 1188.

Third, the parties argue that "protracted litigation would cost the parties significantly more in fees and costs" than the amount at issue. ECF No. 26 at 5–6. Therefore, the Court finds that "the value of an immediate recovery outweighs the mere possibility of

8

future relief after protracted and expensive litigation." *See Rutter & Wilbanks Corp.*, 314 F.3d at 1188.

Fourth, the parties argue that for the reasons stated above, particularly the fact that protracted litigation would be more costly than the amount at issue, "the Agreement is fair and equitable in the judgment of the parties." ECF No. 26 at 5–6. Therefore, the Court finds that it is "the judgment of the parties that the settlement is fair and reasonable." *Rutter & Wilbanks Corp.*, 314 F.3d at 1188.

Finally, the Court finds that the settlement does not frustrate the purpose of the FLSA to "protect certain groups of the population from substandard wages and excessive hours . . . due to the unequal bargaining power as between employer and employee," *Morton*, 2017 WL 977812, at *1, nor the purpose of the Equal Pay Act to "remedy . . . a serious and endemic problem of employment discrimination in private industry," *Corning Glass Works*, 417 U.S. at 195. The parties state that at issue is a pay discrepancy of approximately $30,000 per year for two years, ECF No. 26 at 5, noting that Plaintiff alleged that the average salary of a male colleague was approximately $120,000 per year, while her salary was approximately $90,000 per year, *id.* at 5 n.1. *See Sinclair v. Auto. Club Okla., Inc.*, 733 F.2d 726, 729 (10th Cir. 1984) ("Under the applicable statute of limitations, 29 U.S.C. § 255(a), an employee may recover unpaid wages for up to three years before the filling of suit if the violation was willful but only for two years otherwise."),

9

*cited in* ECF No. 26 at 5–6; *see also* 29 U.S.C. § 255(a).[1]  The proposed Settlement Agreement provides for a settlement amount of $85,000 "to settle all claims asserted or that could have been asserted," which encompasses "$60,000 for wages" and "$25,000 . . . for attorney fees and costs."  ECF No. 26-1 at 1.  The Court finds that a settlement payment of $60,000 for the disputed difference in salary does not frustrate the purpose of the FLSA, as amended by the Equal Pay Act.

"To determine whether a settlement agreement frustrates the FLSA, courts look to factors including: (1) presence of other similarly situated employees; (2) a likelihood that plaintiff's circumstances will recur; and (3) whether defendants have a history of non-compliance with the FLSA."  *Morton*, 2017 WL 977812, at *2.  The Court finds none of these concerns to be present here.  The proposed Settlement Agreement is written for Plaintiff, individually, and there are no allegations of similarly situated employees.  Further, there is no indication that the alleged Equal Pay Act violation could recur, particularly given that the proposed Settlement Agreement contains a "No Future Employment" provision, in which "Plaintiff agrees not to apply for employment or any volunteer appointment at the University's Anschutz Medical Campus at any time in the future," and Defendant "will not employ Plaintiff, in a paid or voluntary basis, on the

---

[1]  Any action commenced on or after May 14, 1947, to enforce any cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended . . .

   (a) if the cause of action accrues on or after May 14, 1947--may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued[.]

29 U.S.C. § 255(a).

10

University's Anschutz Medical Campus at any time in the future." ECF No. 26-1 at 2. Finally, there are no allegations that there is any history of non-compliance with the Equal Pay Act by Defendant. The proposed Settlement Agreement does not run afoul of the policy concerns underpinning the FLSA, as amended by the Equal Pay Act. The Court finds that the proposed Settlement Agreement is fair and reasonable.

### C. Reasonable Award of Attorneys' Fees and Costs

"In common fund cases, courts in this circuit may calculate a reasonable attorney's fee using either the percentage of the fund method or the lodestar method." *Faulkner v. Ensign U.S. Drilling Inc.*, No. 16-cv-03137-PAB-KLM, 2020 WL 550592, at *3 (D. Colo. Feb. 4, 2020) (Brimmer, C.J.). This case does not involve a collective action or plaintiff class who will all obtain a benefit from a "common fund," *see Gottlieb v. Barry*, 43 F.3d 474, 482 (10th Cir. 1994), but rather involves an individual Plaintiff settling her claims. Nonetheless, the Court finds that the percentage-of-the fund method supports approval of the proposed award of attorneys' fees and costs as reasonable and finds that a crosscheck with the lodestar method further supports the award.

### 1. Percentage Method

The parties' proposed Settlement Agreement provides for an award of attorneys' fees and costs of $25,000 to Plaintiff's counsel. ECF No. 26-1 at 1; *see also* ECF No. 26 at 7. This award is less than "a contingent fee of 30% plus costs of $402 which would total $25,902." *See* ECF No. 26 at 7. Moreover, the parties point out that this fee award represents a "compromise of [approximately] ten percent" of "[t]he total billing by all attorneys representing Dr. Jonscher in this matter," which is approximately $27,000. *Id.*

11

at 8 (noting that "total billing by all attorneys representing Dr. Jonscher on this matter is $27,157"); *cf.* ECF No. 26-2 at 1 (noting a billing total of $26,243).

"[A]ttorneys' fees of one-third or thereabouts are generally deemed reasonable." *Thompson*, 2018 WL 2183988, at *3. Moreover, here "[t]he fee was entirely contingent in nature," ECF No. 26 at 8, and "[c]ourts have consistently found that this type of fee arrangement, under which counsel runs a significant risk of nonpayment, weighs in favor of the reasonableness of a requested fee award," *Faulkner*, 2020 WL 550592, at *5. The Court finds this award of attorneys' fees amounting to less than 30 percent of the total award to be reasonable.

### 2. Lodestar Crosscheck

"Courts evaluating the reasonableness of a percentage fee award will often crosscheck the requested fee with the lodestar amount." *Faulkner*, 2020 WL 550592, at *6. "[W]hen 'the lodestar method is used as a mere crosscheck of the percentage method, the court does not need to scrutinize exhaustively the hours documented by counsel.'" *Id.* at *6 n.6 (quoting *Brody v. Hellman*, 167 P.3d 192, 204 (Colo. App. 2007)).

Here, the parties seek to award $25,000 in attorneys' fees and costs for approximately 84 hours worked on the case. *See* ECF No. 26 at 7–8 (noting that the total hours spent by various individual attorneys on the case included 36.8 hours, 17.6 hours, 8.10 hours, 14.2 hours, and 7.3 hours). The requested fee of $25,000 represents a multiplier of approximately 0.92 on counsel's lodestar amount of approximately $27,000. *See id.* at 8; *cf.* ECF No. 26-2 at 1. This lodestar multiplier is within the range of lodestar multipliers that have been approved in this district. *See Faulkner*, 2020 WL 550592, at

12

*6 (approving a lodestar multiplier of 0.27); *Mishkin v. Zynex, Inc.*, No. 09-cv-00780-REB-KLM, 2012 WL 4069295, at *2 (D. Colo. Sept. 14, 2012) (Blackburn, J.) (collecting Colorado federal district court cases approving lodestar multipliers ranging from 2.5 to 4.6).

Further, the parties note that "due to the academic level of Dr. Jonscher and her desire to be consulted at every stage in the process, as well as the need for review of data provided by Defendant, considerable efforts were undertaken in evaluating, drafting, maintaining, and negotiating this case." ECF No. 26 at 8. Therefore, the Court finds the number of hours expended on this case to be reasonable.

Finally, the parties represent to the Court that Plaintiff's counsel's hourly rates ranged from $220 to $350. *See id.* at 8. Typically, "[t]he party requesting fees bears the burden of showing that the requested rates are in line with those prevailing in the community," and "[i]n order to satisfy their burden, plaintiffs must produce satisfactory evidence—*in addition to the attorney's own affidavits*—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Morton*, 2017 WL 977812, at *3 (internal quotations and citations omitted) (emphasis added). In addition, the Local Rules of Practice for this Court require that "a motion for attorney fees shall be supported by affidavit." D.C.COLO.LCivR.54.3(a); *see also Teague v. Acxiom Corp.*, No. 18-cv-01743-NYW, 2018 WL 3772865, at *4 (D. Colo. Aug. 9, 2018) (Wang, Mag. J.) ("Though not presented as a motion for attorney's fees, this court extends such requirement to this

13

context because the Parties are seeking the court's approval of a privately negotiated amount for attorney's fees and costs.").

Here, Plaintiff's counsel has provided no affidavits to support their request for fees based on their proffered hourly rate. However, as stated above, where "the lodestar method is used as a mere crosscheck of the percentage method, the court does not need to scrutinize exhaustively the hours documented by counsel.'" *Faulkner*, 2020 WL 550592, at *6 n.6 (quoting *Brody*, 167 P.3d at 204). Therefore, here, the Court elects to accept the parties' proffer regarding Plaintiff's counsel's hourly rate for purposes of the lodestar crosscheck. Those rates ranging from $220 to $350 are generally consistent with the rates charged in other cases in this district. *See, e.g.*, *id.* at *6 (citing *Shaw v. Interthinx, Inc.*, No. 13-cv-01229-REB-NYW, 2015 WL 1867861, at *8 (D. Colo. Aug. 22, 2015) (Blackburn, J.)) (noting that hourly rates ranging from $150 to $600 per hour were "generally consistent with the rates charged in other cases in this district").

Overall, the lodestar crosscheck supports the reasonableness of the requested attorneys' fees and costs.

## IV.    CONCLUSION

For the reasons stated above, the Court GRANTS the parties' Joint Motion to Approve Settlement, ECF No. 26, and APPROVES the parties' proposed Settlement Agreement, ECF No. 26-1.

The parties are DIRECTED to file the appropriate dismissal papers within thirty (30) days of the date of this Order.

DATED: November 26, 2021

BY THE COURT:

_____
REGINA M. RODRIGUEZ
United States District Judge